Nos. 11-1462 and 11-1463
Criminal

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

**UNITED STATES OF AMERICA,**

           **Plaintiff and Appellee,**

vs.

**MICHAEL HOWARD REED and**
**GREGORY ALLEN DAVIS,**

           **Defendants and Appellants.**

---

**Appeal from the United States District Court**
**for the District of North Dakota**

---

**The Honorable Charles B. Kornmann**
**United States District Court Judge**

---

**APPELLEE'S BRIEF**

---

**BRENDAN V. JOHNSON**
**United States Attorney**
**Thomas J. Wright**
**Assistant United States Attorney**
**P.O. Box 2638**
**Sioux Falls, SD 57101-2638**
**(605)357-2353**

**Attorneys for Appellee.**

## SUMMARY AND STATEMENT
## REGARDING ORAL ARGUMENT

A jury convicted Michael Howard Reed and Gregory Allen Davis of three counts of filing false liens against public officials in violation of 18 U.S.C. § 1521. The jury also convicted Reed of two counts of making harassing or threatening phone calls in violation of 18 U.S.C. § 1503(a).

The first issue in this appeal is whether the district court properly allowed each defendant to represent himself at trial. The second issue in this appeal is whether there was sufficient evidence against Davis to support his three felony convictions.

The United States requests that if oral argument is granted, the United States be given the same amount of time as appellants.

-i-

# **TABLE OF CONTENTS**

SUMMARY AND STATEMENT REGARDING ORAL ARGUMENT . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT:

      I.    THE DISTRICT COURT DID NOT ERR IN ALLOWING
           EACH DEFENDANT TO REPRESENT HIMSELF. . . . . . . . . . . 10

      II.   SUFFICIENT EVIDENCE WAS PRESENTED AT TRIAL
           TO SUPPORT DAVIS' CONVICTIONS ON COUNTS 1
           THROUGH 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

ADDENDUM

Appellate Case: 11-1462   Page: 3   Date Filed: 05/27/2011 Entry ID: 3791929

# TABLE OF AUTHORITIES

CASES:

*Faretta v. California*, 422 U.S. 806 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 1, 14

*Martinez v. Court of Appeal*, 528 U.S. 152 (2000) . . . . . . . . . . . . . . . . . . . . . . . 15

*McKaskle v. Wiggins*, 465 U.S. 168 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Polytech, Inc. v. Affiliated FM Ins. Co.*, 21 F.3d 271 (8th Cir. 1994) . . . . . . . . . . 21

*United States v. Crawford,* 487 F.3d 1101 (8th Cir. 2007) . . . . . . . . . . . . . . . 2, 10

*United States v. Guenther*, 470 F.3d 745 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . 17

*United States v. Joiner*, 418 F.3d 863 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . 2, 23

*United States v. Keiser*, 578 F.3d 897 (8th Cir. 2009) . . . . . . . . . . . . . 2, 10-11, 15

*United States v. Mallen*, 843 F.2d 1096 (8th Cir. 1988) . . . . . . . . . . . . . . . . . 2, 17

*United States v. Mentzos*, 462 F.3d 830 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . . 10

*United States v. Piwowar,* 492 F.3d 953 (8th Cir. 2007) . .. . . . . . . . . . . . . . . . 2, 16

*United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986) . . . . . . . . . . . . . . . 10

*United States v. Washington*, 596 F.3d 926 (8th Cir. 2010) . . . . . . . . . . . . . . . . 11

*United States v. Williams*, No. 09-2998, 2011 WL 668114 (8th Cir. 2011)
(unpublished) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Appellate Case: 11-1462    Page: 4    Date Filed: 05/27/2011 Entry ID: 3791929

STATUTES:

18 U.S.C. § 1521 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, 17

18 U.S.C. § 1503(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

OTHER AUTHORITY:

Black's Law Dictionary 404 (6th ed. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

Black's Law Dictionary 1,217 (6th ed. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Appellate Case: 11-1462    Page: 5    Date Filed: 05/27/2011 Entry ID: 3791929

## JURISDICTIONAL STATEMENT

Michael Howard Reed and Gregory Allen Davis appealed the judgment and sentence of the Honorable Charles B. Kornmann entered on February 16, 2011. The district court had jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3242. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

References to the transcript of the arraignment of Michael Howard Reed will appear as "RAT" (Reed arraignment transcript) followed by the appropriate page number. References to the transcript of the arraignment Gregory Allen Davis will appear as "DAT" (Davis arraignment transcript) followed by the appropriate page number. References to the trial transcript will appear as "T" following by the appropriate page number. Citations to the clerk's docket entries will appear as "DE" following by the appropriate docket number. References to Reed's initial brief filed with this Court will appear as "RB" (Reed brief) followed by the appropriate page number. References to Davis' initial brief filed with this Court will appear as "DB" (Davis brief) followed by the appropriate page number.

-1-

## STATEMENT OF THE ISSUES

I.   WHETHER THE DISTRICT COURT ERRED IN ALLOWING EACH DEFENDANT TO REPRESENT HIMSELF?

*Faretta v. California*, 422 U.S. 806 (1975)
*United States v. Crawford,* 487 F.3d 1101 (8th Cir. 2007)
*United States v. Keiser*, 578 F.3d 897 (8th Cir. 2009)

II.  WHETHER SUFFICIENT EVIDENCE WAS PRESENTED AT TRIAL TO SUPPORT DAVIS' CONVICTION ON COUNTS 1 THROUGH 3 OF THE INDICTMENT?

*United States v. Piwowar,* 492 F.3d 953 (8th Cir. 2007*)*
*United States v. Mallen,* 843 F.2d 1096 (8th Cir. 1988)
*United States v. Joiner,* 418 F.3d 863 (8th Cir. 2005)

## STATEMENT OF THE CASE

On June 8, 2010, an indictment was filed against defendants Michael Howard Reed and Gregory Allen Davis.  Counts 1, 2, and 3 charged both defendants, while counts 4 and 5 charged Reed only.  On October 14, 2010, both defendants were convicted on all counts.  On February 14, 2011, Reed was sentenced to concurrent terms of 108 months, and Davis was sentenced to concurrent terms of 41 months.  Each filed a timely appeal.

## STATEMENT OF THE FACTS

In November of 2008, the United States Attorney's Office for the District of North Dakota filed a 17-defendant indictment alleging numerous narcotic offenses

-2-

(T 87).  Two of the 17 defendants charged were members of the Little Shell Band, an unrecognized Indian tribe in North Dakota (T 87).  The cases involving all 17 defendants were assigned to United States District Court Judge Ralph Erickson (T 91).

At that time, appellant Michael Reed (Reed) was or claimed to be the Attorney General for the Little Shell Nation (T 338).  Reed, upset with the fact that Judge Erickson had not dismissed the cases against the two Little Shell members, sent an unsolicited fax to the Federal Bureau of Investigation demanding that the charges against the two men be dismissed (T 119).  Reed then later left a threatening message on the answering machine to Judge Erickson's chambers on May 6, 2009 (T 105-106).  Judge Erickson's law clerk initially heard the call and immediately notified the United States Marshal's Service (T 106).  The FBI was later notified (T 120).

On June 8, 2009, Reed left a second recorded message.  This call was to the FBI office in Minot, North Dakota (T 121).  During this second recorded phone call, Reed left a message that the FBI "had a judge that's about to get the trigger pulled on him."  (T 121).  Reed later admitted to the FBI that he made both the call to Judge Erickson and to the Minot FBI office (T 124-125).  The FBI obtained a search warrant and found a firearm belonging to Reed (T 128-129).

-3-

The United States Attorney's Office for the District of North Dakota then indicted Reed for allegedly being a fugitive in possession of a firearm (T 146). The indictment was signed by Acting United States Attorney Lynn Jordheim (Jordheim) (T 146). The firearms case was assigned to United States District Court Judge Daniel Hovland (Hovland) (T 147). In late December of 2009, Judge Hovland filed an order denying Reed's motion to dismiss the firearms case (T 150).

Upset with the fact that Reed was now being prosecuted, Reed and Little Shell member Gregory Allen Davis (Davis) then conspired to and eventually did file false liens against both Hovland and Jordheim. Reed and Davis had two conversations which were recorded at the detention facility where Reed was awaiting trial on the firearms charge (T 48). In a recorded conversation on January 5, 2010, Reed and Davis discussed Davis placing a $2.4 million lien in cash and a $1 million lien in silver against certain individuals (T 248). Reed at that time had no access to the Internet because he was in jail (T 255-256).

The day after the recorded telephone conversation, Davis accessed the Internet and at 10:01 p.m. electronically filed a financing statement placing a $3.4 million lien against Judge Hovland and Jordheim (T 152-153). In the financing statement Davis demanded $2.4 million in cash and $1 million in silver. The lien was electronically filed with the Washington D.C. Recorder of Deeds Office, a "default" filing entity

-4-

wherein liens can be electronically filed from just about anywhere in the world (T 162, 164). Testimony at trial revealed that when a lien is filed with that office electronically after hours (as Davis did in this case), it gets no internal review by that office and becomes automatically filed (T 158).

Approximately three weeks after the lien was filed, Davis was interviewed by FBI Special Agent Aaron Kellerman. Davis admitted to filing the lien against Hovland and Jordheim, and threatened to file more liens against other officials during the interview (T 175). When Davis was told by the agent that filing false liens against federal officials is against the law, Davis branded the federal law as "asswipe" (T 176, 382). Davis eventually testified at trial that he did file the false lien (T 383-384), that the lien had never been withdrawn by him or anyone else (T 383), and that he had the right to file a lien against a federal judge presiding over a criminal case involving one of his friends (T 385).

On May 5, 2010, Michael Howard Reed, now having been convicted by a jury on the firearms case, filed handwritten documents (trial exhibits 11 and 12) with the federal clerk's office in North Dakota. Reed's handwritten documents demanded payment (Notice of Default) of the $2.4 million in cash and the $1 million in silver, exactly as Davis had demanded in the financing statement/lien in January of 2010 (T 181-184, 208). Reed admitted to drafting and filing the handwritten documents

-5-

(Notice of Default) demanding payment of the nearly $3.5 million which he contended he and Davis had coming on the false lien filed against Hovland and Jordheim (T 181).  Reed's handwritten documents filed in May 2010 referenced the exact ten-digit docket number assigned to Davis' financing statement/lien filed in January 2010.

Civil Chief Diana Ryan of the United States Attorney's Office in South Dakota testified at length about the efforts of her office to attempt to extinguish the liens filed by the defendants against Judge Hovland and  Jordheim (T 264-268).  Ryan testified that her office had filed a complaint to remove the liens currently on record and the efforts and difficulty in serving the defendants and litigating the case (T 267).  As of the date of the trial, the liens had not yet been extinguished (T 268 ).

Reed and Davis were indicted on June 8, 2010 for various offenses.  Reed and Davis were indicted for conspiring to file a false lien against a federal official, and then each was charged with separate counts of attempting to file, aiding and abetting, or filing a lien against Judge Hovland and Jordheim.  Reed was also charged with two counts of making threatening phone calls.

On June 15, 2010, Reed and Davis were both arraigned in Grand Forks, North Dakota.  Both men were very uncooperative with the magistrate judge, but each made it very clear that they did not want court-appointed counsel and that they wanted to

Appellate Case: 11-1462     Page: 11     Date Filed: 05/27/2011 Entry ID: 3791929

be their own attorneys. Reed, who had his hands over his ears during most of the arraignment (T 17), told the magistrate judge that she was "void" (RAT 7, 19) and that he would fire any standby counsel that might be appointed to represent him (RAT 17). Reed's standby counsel, James Hovey, told the magistrate judge that Reed had refused to meet with him prior to the arraignment (RAT 19).

Davis was even more emphatic that he did not want a court-appointed attorney. Three times during the arraignment, Davis warned the magistrate judge that not only did he not want a court-appointed attorney, but that he would file a lien against any court-appointed attorney that may be appointed to represent him and perhaps against other individuals (DAT 8-9, 13-14, 14-16). The magistrate judge went to great lengths trying to convince Davis to accept standby counsel, and Davis' only response was warn that he would "lien it all down like I did before." (DAT 14 ). Davis admitted to the magistrate that he had no mental problems (DAT 7) and told his court-appointed attorney to "stay back and watch. We do this." (DAT 29-30).

Approximately a month after both men were arraigned, the district court (the Honorable Charles B. Kornmann) sent each standby counsel a memorandum and an attached list of questions/advisements delineating the dangers of a defendant representing himself (DE 20). Judge Kornmann directed standby counsel to deliver the written advisement to each defendant (DE 20).

-7-

Trial eventually commenced on October 12, 2010. Prior to trial, the district court heard pretrial motions in the courtroom. During the pretrial motions, Reed again ridiculed his standby counsel[1] saying that he has "no idea about the authority of the United States." (T 17). Reed also told the district court that standby counsel should have never been appointed in this case (T 17). Both Reed in his appellate brief (RB 4) and Davis in his appellate brief (DB 4) admit that they made it clear to the magistrate judge that they wanted to represent themselves and/or would fire standby counsel.

The trial commenced and the testimony was received consistent with this statement of facts. In addition, both Jordheim and Judge Hovland testified that they would have no reason to owe Reed or Davis 3.4 million dollars (T 214, 223). Judge Hovland also testified under cross-examination that two months after the lien was filed against him he was denied a credit card (T 227-228). Judge Hovland also testified that around the same time he tried to co-sign an application for his son's credit card, and that credit card was also denied (T 227-228). Judge Hovland testified that being denied credit like this had never happened before in his life (T 228) and that his annual salary was 174,500 dollars (T 232).

---

[1] A few weeks after the trial, Reed's standby counsel was appointed to the state court bench.

Appellate Case: 11-1462   Page: 13   Date Filed: 05/27/2011 Entry ID: 3791929

Reed and Davis represented themselves during the entire evidentiary phase of the trial. Davis eventually had his standby counsel give the final argument (T 438). Reed and Davis were convicted on all charged counts. Reed was sentenced to 108 months and is currently serving his sentence. Davis was sentenced to 41 months, and is currently serving his sentence.

## SUMMARY OF THE ARGUMENT

Each defendant was properly allowed to represent himself. Each was adamant that he wanted to represent himself, and that he would fire any standby counsel. Davis, in fact, went so far as to repeatedly warn the magistrate judge that he would file a lien against any attorney that would be appointed to represent him.

Further, sufficient evidence was presented to support the convictions of Davis of all three counts. The financing statement/lien filed by Davis clearly attached or was intended to attach to personal property as witnessed by the fact that Davis named Hovland and Jordheim as "debtors," and asked for a specific amount ($3.4 million ) within the financing statement. Reed later filed separate documents demanding payment of the same debt.

Appellate Case: 11-1462    Page: 14    Date Filed: 05/27/2011 Entry ID: 3791929

## ARGUMENT

## I.

## THE DISTRICT COURT DID NOT ERR IN ALLOWING EACH DEFENDANT TO REPRESENT HIMSELF.

A.  <u>Introduction and standard of review</u>.

Reed and Davis argue on appeal that the district court committed some kind of error by allowing each defendant to represent themself. Although neither asserted mental illness at trial or on appeal, both now claim on appeal that they somehow could not knowingly and intelligently waive their right to counsel. This Court reviews de novo any decision to allow a defendant to represent himself at trial (*United States v. Mentzos*, 462 F.3d 830, 838 (8th Cir. 2006)), but that "deference is owed to the district court's determinations based on observation of the defendant during the proceedings." *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986).

B.  <u>Discussion</u>.

This Court has held on a number of occasions that a defendant properly advised of the dangers of self representation who proceeds to represent himself at trial cannot later claim that he did not validly waive his right to counsel. *United States v. Crawford*, 487 F.3d 1101, 1105 (8th Cir. 2007); *United States v. Keiser*, 578 F.3d 897

-10-

(8th Cir. 2009); *United States v. Williams*, No. 09-2998, 2011 WL 668114 (8th Cir. 2011) (unpublished).

The Constitution guarantees every criminal defendant the right to proceed without counsel when he voluntarily and intelligently elects to do so. *Faretta v. California*, 422 U.S. 806, 807 (1975). The right reflects "a nearly universal conviction on the part of our people as well as the courts that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Id*. at 817.

In *United States v. Washington*, 596 F.3d 926 (8th Cir. 2010), this Court held that a trial judge need not conduct an inquiry into the competency of every defendant who requests to proceed pro se, nor does the court even have to hold a hearing prior to making a competency determination. *Id.* at 941. The United States Supreme Court has recognized the danger of forcing an attorney upon a defendant who does not want one:

> The value of state-appointed counsel was not unappreciated by the Founders, yet the notion of compulsory counsel was utterly foreign to them. And whatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice.

*Faretta* at 833-834. The High Court went on to note:

-11-

> To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage.

*Id.* at 834.

There can be no doubt that both Reed and Davis were advised a number of times of their right to court-appointed counsel and that they clearly and adamantly insisted they did not want attorneys appointed to represent them. At his arraignment, Reed was advised a number of times by the magistrate of his right to counsel, but refused to listen by placing his hands over his ears (RAT 15, 16). Reed in no uncertain terms told the magistrate that he would fire his standby counsel (RAT 17). Reed's standby attorney, James Hovey, informed the magistrate that Reed had refused to talk to him (RAT 19). A review of the transcript of Reed's arraignment shows that Reed was totally uncooperative with the magistrate during the hearing (RAT 3-19). Reed constantly interrupted the magistrate judge, placed his hands over his ears (RAT 17), and had to be forced to face forward by a deputy marshal putting pressure on Reed's chair. Reed should not be able to benefit on appeal by claiming that he did

-12-

not validly waive his right to counsel when, in fact, every effort made to educate Reed on the right to counsel brought resistance from him in the courtroom.

Davis was even more adamant during his arraignment that he wanted to represent himself and did not want court-appointed counsel. Three times during the arraignment when the magistrate judge was attempting to explain to Davis the need to use an attorney, Davis made clear that he did not want court-appointed counsel (DAT 8-9, 13-14, 14-16). Three times during the arraignment Davis told the magistrate that he would place a lien on any attorney appointed to represent him (DAT 8-9, 13-14, 14-16). Although the magistrate judge went to great lengths to convince Davis to accept his court-appointed attorney, Davis repeatedly responded that he would "put the lien on this." (DAT 16). Davis even told his standby attorney to get out of the way at the arraignment when he told him to "stay back and watch. We do this." (DAT 29-30).

In addition to the magistrate judge's repeated attempts to advise Reed and Davis to consider court-appointed counsel, the district court prepared a written document informing both Reed and Davis of the dangers of self representation (DE 20). This document is included in the addendum to this brief, and is found at docket entry 20 in the clerk's file. In this very detailed document which the district court ordered standby counsel to serve on each defendant, the district court repeatedly

-13-

warned of the dangers of self-representation. Likening the scenario to an inexperienced pilot, the district court warned each defendant that "you might crash." The district court's written advisement provided to each defendant in jail served as a permanent reminder to each defendant about the dangers of self representation.

The morning of trial, Reed again made it clear to the district court that he did not want court-appointed counsel. Outside the jury's presence, Reed told the district court that standby counsel "has no idea about the authority of the United States (T 16), and that standby counsel should have never been appointed." (T 16). Reed was especially belligerent to the district court before and during trial. For example, before the trial started, Reed instructed a deputy United States Marshal in the courtroom to arrest the district court (T 19). The district court had to tell Reed to quit hollering at him or the district court would have him removed (T 19-20). Reed called the trial proceedings a kangaroo court (T 20). Davis was not as belligerent to the district court as he was to the magistrate judge. However, Davis did tell the district court before the trial started that he (Davis) was "pretty pissed." (T 22).

The district court's decision to allow each defendant to continue to represent himself as each adamantly requested at arraignment is without error. Any other result would have been clearly contrary to law. A defendant has the absolute right to represent himself. *Faretta*, 422 U.S. at 815. Indeed, if the district court had denied

-14-

the defendants the right to represent themselves, <u>then</u> clearly the defendants would have a valid claim on appeal. The district court's decision to allow each defendant to continue to represent himself was in accordance with the case law. *See, e.g., Martinez v. Court of Appeal*, 528 U.S. 152 (2000). In fact, the district court's decision to appoint standby counsel was not even required. There is no requirement that a district court even appoint standby counsel to a defendant who wants to represent himself. *McKaskle v. Wiggins*, 465 U.S. 168 (1984); *Keiser*, 578 F.3d at 903.

Both Reed and Davis admit in their briefs that they told the magistrate judge that they wanted to represent themselves, and would fire standby counsel (RB 6), (DB 4). Neither defendant is claiming any kind of mental illness defense or that they were mentally incompetent to waive their right to counsel. Therefore, under the law, the district court had no choice but to allow each defendant to represent himself. The magistrate judge's repeated admonitions to each defendant for them to consider court-appointed counsel went unheard largely because each defendant was so rude and disruptive to the magistrate (DAT 3-33, RAT 3-19). The district court warned each defendant in writing of all of the dangers of representing themselves (DE 20). The district court at trial displayed a commendable and remarkable amount of patience with these two belligerent defendants. For example, Reed called Judge Kornmann

-15-

a liar (T 420) in the courtroom, and "ordered" a deputy marshal to arrest the district court in the courtroom (T 19). Reed and Davis should not be heard to claim on appeal that they were not sufficiently advised against self representation when every effort and attempt to do the same was met with strong resistance. Any contrary approach now urged on appeal (to have forced an attorney upon either unwilling, belligerent defendant ) is exactly what the case law prohibits, and would have made a volatile trial situation much worse.

## II.

## SUFFICIENT EVIDENCE WAS PRESENTED AT TRIAL TO SUPPORT DAVIS' CONVICTIONS ON COUNTS ONE THROUGH 3.

A.  Introduction and standard of review:

Davis also argues on appeal that there was insufficient evidence to support his convictions on counts 1 through 3. As the government understands it, Davis' argument on appeal is that the lien he admits filing or attempting to file was not "against" the real or personal property of the public officials named as debtors in the financing statement. This Court reviews sufficiency of evidence challenges de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict. *United States v. Piwowar*, 492 F.3d 953 (8th Cir. 2007). The jury, not the

Appellate Case: 11-1462   Page: 21   Date Filed: 05/27/2011 Entry ID: 3791929

reviewing court, evaluates the credibility of the witnesses and weighs the testimony. *United States v. Mallen*, 843 F.2d 1096, 1099 (8th Cir. 1988). This Court has held that it will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Guenther*, 470 F.3d 745, 747 (8th Cir. 2006).

B.    <u>Discussion</u>.

Section 1521 of Title 18 provides that whoever files or attempts to file or conspires to file in any public or private record a false lien or encumbrance against the real or personal property of a public official because of that official's duties shall be fined or imprisoned. Davis' appellate argument that the lien he filed did not attach or was not intended to attach to any real or personal property of Judge Hovland or Mr. Jordheim is belied by a plain reading of the financing statement.

The financing statement, which was received into evidence as Government's Exhibit 9, can be found in the addendum to this brief. The financing statement names Gregory Davis as the "filer" of the financing statement. Further, page one of the financing statement names Daniel Hovland and Lynn C. Jordheim as <u>debtors</u>. (T163). Black's Law Dictionary 6th Edition defines a debtor as:

> One who owes a debt to another who is called the creditor; one who may be compelled to pay a claim on demand; anyone liable on a claim whether due or to become due. Debtor means the person who owes

-17-

payment or other performance of the obligation secured, whether or not he owns or has rights to the collateral, and includes the seller of accounts or chattel paper.

Black's Law Dictionary 404 (6th ed. 1990). Therefore, Davis' actions of listing the public officials as his debtors clearly implies that he is intending to seek some monetary relief from them.

Further, and more important, Davis directly delineates the <u>amount</u> that he contends he is owed by the debtors in the financing statement. Davis writes in the financing statement: "This UCC lien in this instant action is $2,400,100.00 USD for default of court case #4-09-cr-0076-DLH and $1,000,000 (million) in sliver (sic) coinage for copyright violations of MICHAEL HOWARD REEDTM. The full description of the collateral in the financing statement reads as follows:

> Accepted for full value alleged in court case #4-09-cr-00076-DLH, United States District Court for the District of North Dakota; Northwestern Division, et al; 220 East Rosser Avenue, Post Office Box 1193, Bismarck, North Dakota 58502; Michael Howard Reed, Social Security number XXX-XX-XXXX[2], Certificate of Birth number 7053-38965, Private Offset Account number 572391433, Private Discharging and Indemnity Bond number 77915985385; Timothy Geithner, Secretary of the U.S. Treasury; United States Attorney General, Eric Holder/acting agent et al; The US Department of Justice/acting agent et al; Governor John Hoeven, North Dakota/acting agent et al; Attorney General for North Dakota Wayne Stenehjem/acting agent et al; Chief

---

[2] Reed's full social security number was listed in the financing statement. The government has redacted that number from this brief and from the financing statement in the addendum.

-18-

Justice Ralph R. Erickson/acting agent et al; District Judge Daniel L. Hovland/acting agent et al; Senior Judge Rodney S. Webb/acting agent et al; Senior Judge Patrick A. Conmy/acting agent et al; Chief Magistrate Judge Karen K. Klein/acting agent et al; Magistrate Judge Charles S. Miller, Jr./acting agent et al; Magistrate Judge Alice R. Senechal/acting agent et al; Chief Clerk of Court, Untied Stated District Court of North Dakota, Robert Ansley/acting agent et al; Craig Zachmier, Criminal Investigator for the Attorney Generals Office of North Dakota/acting agent et al; The US Department of Justice, Ryan ONeal, Special FBI Investigator for North Dakota/acting agent et al; US Department of Justice, Agent Cody Patterson, Special FBI Investigator for North Dakota/acting agent et al; Acting Untied States Attorney, Lynn C. Jordheim/acting agent et al, Post Office Box 699, Bismarck, North Dakota 58502-0699; Assistant United States Attorney/acting agent et al, David D. Hagler, Post Office Box 699, Bismarck, North Dakota 58502-0699; Assistant Federal Public Defender, Orell Schmitz/acting agent et al, Bismarck, North Dakota 58502; HACTC Detention Center, Pierce County, Rugby North Dakota; United States Registered Mail Number RE 364 689 192 US = Jurat Affidavit of Obligation, Affidavit and Affirmation of the Facts. <u>This UCC lien in this instant action is $2,400,100.00 USD for default of court case #4 09-cr-00076-DLH and $1,000,000,000(million) in sliver(sic) coinage</u> for copyright violations of MICHAEL HOWARD REEDTM.

The adjustment of this filing is from Public Policy and UCC 1-104. All proceeds, products, accounts and fixtures including order(s) wherefrom are released to the debtor. The Secured parties name is Trade Name/Trade Marked and Copy Righted. The Secured Party stands by the Treaty of 1778, 1863, The Declaration of Princess Anne 1704 In regards to Mohegan Indians v Connecticut, The Royal Proclamation of King George 1763, Declaratory Judgement <28 USC 201>; Esens=Little Shell occupants of the land.

(Emphasis added.)

-19-

The fact that the financing statement uses the term "lien" and then lists a very specific dollar amount shows that Davis intended to attach that amount of money/silver from claimed debtors Jordheim and Judge Hovland. Money is obviously personal property contemplated by the statute. Personal property is defined by Black's Law Dictionary as follows:

> *Personal property*. In broad and general sense, everything that is the subject of ownership, not coming under denomination of real estate. A right or interest in things personal, or right or interest less than a freehold in realty, or any right or interest which one has in things movable.
>
> Generally, all property other than real estate; as goods, chattels, <u>money</u>, notes, bonds, stocks and choses in action generally, including intangible property. Bismarck Tribune Co. v. Omdahl, N.D. 147 N.W.2d 903, 906. It is sometimes designated as personalty when real estate is termed realty. Personal property also can refer to property which is not used in a taxpayer's trade or business or held for the production or collection of income. When used in this sense, personal property could include both realty (*e.g.* , a personal residence) and personalty (*e.g.*, personal effects such as clothing and furniture).
>
> <u>Personal property includes money</u>, goods, chattels, things in action, and evidence of Debt. Calif.Evid.Code.

<u>Black's Law Dictionary</u> 1,217 (6th ed. 1990) (emphasis added). The law dictionary's definition of personal property as including money is consistent with this Court's definition of personal property as including: "money, goods, chattels, things in action

-20-

and evidence of debt." *Polytech, Inc. v. Affiliated FM Ins. Co.*, 21 F.3d 271, 274 (8th Cir. 1994).

The fact that Davis included in his lien/financing statement a request for a very <u>specific</u> dollar amount showed his intent that his lien attach to personal property of Jordheim or Hovland. In fact, Reed and Davis specifically discussed that exact dollar amount in their jailhouse conversation on January 5, 2010 (the day before the financing statement was electronically filed). On January 5, 2010, Reed and Davis engaged in a recorded telephone conversation (played for the jury) where they discussed Davis placing a $2.4 million lien and a $1 million lien in silver against certain individuals (T 248). It is undisputed that these specific amounts were included in the financing statement (Government's Exhibit 9, T 163, 298). The fact that Reed and Davis discussed and included specific dollar amounts in their lien, which Davis does not deny filing, provides viable support for the jury's finding that the lien was against or intended to be against the personal property of Jordheim and Hovland.

Other evidence was presented to show that the lien was "against" the personal property of Hovland and Jordheim. On May 5, 2010, Michael Howard Reed filed a "Notice of Default" with the clerk of courts' office demanding payment of the $2.4 million in cash and $1 million in silver. (Exhibits 11 and 12). There could be no

-21-

"default" if no property was ever intended to be attached. Reed's handwritten default notice demanding payment contained the exact ten-digit financing statement number that had been assigned to the lien/financing statement filed by Davis in January of 2010 (T 181-184, 208). Reed admitted to drafting and filing the handwritten documents (Exhibits 11 and 12) demanding payments of the nearly $3.5 million. Why would Reed demand/insist on payment of their lien if it was never against personal property as Davis contends on appeal?

Further, there was testimony at trial that Civil Chief Diana Ryan of the South Dakota U.S. Attorney's Office had gone to extensive efforts in an attempt to extinguish the liens filed against Hovland and Jordheim (T 264-268). Ryan would not likely file a complaint to remove liens currently on record if they had no significance or did not attach to any real or personal property.

Further, the fact that Judge Hovland testified he experienced adverse consequences to his credit two months _after_ the lien was filed against him should also be considered. Judge Hovland testified that his annual salary was $174,500 (T 232) and that he routinely had good credit (T 230). Hovland testified that two months after the lien was filed against him he was denied a credit card (T 227-228). Judge Hovland also testified that around the same time he tried to co-sign an application for a credit card for his son, and that credit was also denied (T 227-228). Judge Hovland

-22-

testified that he had never been denied credit before in his life (T 229). Although there may or may not be a direct correlation between Davis filing a $3.4 million lien against Hovland and Hovland being denied credit two months later, a reasonable jury could find such a denial of credit unusual to a man of his position and salary.

Finally, even if Reed and Davis had been unsuccessful in placing the lien on Jordheim's/Hovland's property (which the government does not concede), the conspiracy and attempt to file the lien would still be sufficient to violate the statute. In *United States v. Joiner*, 418 F.3d 863 (8th Cir. 2005), a case factually similar to the instant one, this Court held that "conspiring to file unfounded liens against prosecutors and judges in retaliation for a criminal conviction is nonetheless an illegal purpose." *Id*. at 867. In affirming the convictions of two defendants who (like here) filed false UCC financing statements against a federal judge and a United States Attorney, this Court held that even though no property of the named debtors was "injured," the success of the planned illegal endeavor was irrelevant. *Id*. at 867.

## CONCLUSION

For all of the above reasons, the government asks that the convictions be affirmed.

-23-

Respectfully submitted this 26th day of May, 2011.

BRENDAN V. JOHNSON
United States Attorney


_____ */s/ THOMAS J. WRIGHT* _____
Thomas J. Wright
Assistant United States Attorney
P.O. Box 2638
Sioux Falls, SD 57101-2638
(605)357-2353


## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because it contains 5,554 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word Perfect X4 in a typeface of 14 points or more.

This brief complies with Eighth Circuit Rule 28A(h)(2) because the electronic version of this brief has been scanned for viruses using Trend Micro OfficeScan for Windows 8.0 and is virus free.


_____ */s/ THOMAS J. WRIGHT* _____
Thomas J. Wright
Assistant United States Attorney

Appellate Case: 11-1462    Page: 29    Date Filed: 05/27/2011 Entry ID: 3791929

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that this brief was submitted for filing to the Clerk of the Eighth Circuit Court of Appeals via electronic filing, and that copies of same were served upon Joel Larson and Kerry Rosenquist, attorneys for Appellants, via e-filing, on May 26, 2011.

*/s/ THOMAS J. WRIGHT*

Thomas J. Wright
Assistant United States Attorney

Appellate Case: 11-1462   Page: 30   Date Filed: 05/27/2011 Entry ID: 3791929